UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RUBEN **QUIROZ**-TREJO, ) | |
| ) | |
| *Petitioner,* ) | |
| ) | |
| v. ) | CASE NO.: 3:15-cv-1020 |
| ) | |
| DAVID **RIVERA**, ) | SENIOR JUDGE WILLIAM J. HAYNES, JR. |
| ) | |
| *Respondent.* ) | |

**PETITIONER'S REPLY AND TRAVERSE**

## Introduction

Petitioner Ruben Quiroz-Trejo ("Petitioner" or "Mr. Quiroz") is a 25 year-old father who has resided in the United States continuously since entering from his native Mexico at approximately two months old. After arresting Mr. Quiroz as he reported to court for a minor traffic violation in Wilson County, federal immigration authorities separated him from his seven year-old U.S. Citizen daughter Kassandra and his long-time U.S. citizen fiancé Denise and detained him in a for-profit immigration jail in central Louisiana without any opportunity to seek bond.

To justify depriving Mr. Quiroz of his liberty in this manner, the Department of Homeland Security ("DHS") points to his 2009 conviction for auto burglary in Cook County, Illinois—for which Mr. Quiroz received and completed two years of probation— and to Section 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c). DHS claims that in light of his nearly seven year-old criminal conviction, Section 236(c) mandates Mr. Quiroz's no-bond detention for the entirety of his removal proceeding. DHS is mistaken.

The plain language and structure of the INA's detention statute, its purpose, and the constitutional prohibition on deprivation of liberty without due process require the government to afford Mr. Quiroz an individualized bond determination.

The INA authorizes immigration officials to arrest, detain, and, importantly, *release* noncitizens while their removal proceedings are pending. INA § 236(a), 8 U.S.C. § 1226(a). An exception to this default rule of bond eligibility for nearly all noncitizens DHS apprehends applies to a limited class of people convicted of certain crimes *and* whom DHS detains "when [they are] released" from criminal custody. INA § 236(c), 8 U.S.C. § 1226(c).

Mr. Quiroz falls outside this narrow statutory exception because he returned to his community, raised his daughter, provided for his fiancé, and with the exception of a minor traffic violation for which he has not been convicted, abided by the law during the six years that passed between his release from criminal custody and his apprehension by DHS. Accordingly, Mr. Quiroz is bond-eligible under INA § 236(a), 8 U.S.C. § 1226(a).

This conclusion finds support in a long line of persuasively reasoned, published district court decisions within this Circuit, *see, e.g.*, *Rosciszewski v. Adduci*, 983 F. Supp. 2d 910 (E.D. Mich. 2013); *Khodr v. Adduci*, 697 F. Supp. 2d 774 (E.D. Mich. 2010), as well as the recently published *en banc* decision of the First Circuit in *Castañeda v. Souza*, Nos. 13-1994, 13-2509, --- F.3d ----, 2015 U.S. App. Lexis 22565 (1st Cir. Dec. 23, 2015) (Slip Opinion attached), and at least eighty-nine other district courts around the nation. *See Castañeda*, Slip Op. at 14, n.9.

Urging the opposite result, DHS asks the Court to find statutory ambiguity where none exists, to rely on a Board of Immigration Appeals (BIA) decision that not only conflicts with Respondent's stated position in the filings before this Court, but also

defenestrates the traditional tools of statutory construction, and finally, to read the INA's detention statute in a manner that would bring it into impermissible conflict with the Due Process Clause. Because none of DHS's arguments for subjecting Mr. Quiroz to mandatory detention without an individualized bond hearing accurately reflect the language and meaning of the INA or the Due Process Clause, the government's position should be rejected, and this Court should order that the Attorney General afford Mr. Quiroz with a prompt, individualized bond determination.

## **Statutory Framework**

Congress defined the authority of federal immigration officials to detain noncitizens they arrest pending removal proceedings in Section 236 of the INA. 8 U.S.C. § 1226. The issue in this Petition is whether Mr. Quiroz falls within the default rule of eligibility for bond provided by Section 236(a), or whether, as the government claims, he is subject to the mandatory, no-bond detention requirement of Section 236(c). 8 U.S.C. § 1226(a) provides in relevant part:

> (a) Arrest, detention, and release. On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. *Except as provided in subsection (c)* and pending such decision, the Attorney General—
> > (1) may continue to detain the arrested alien; and (2) may release the alien on—
> > > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> > > (B) conditional parole . . . .

8 U.S.C. § 1226(a) (emphasis added).

Section 1226(c) creates a specific exception to the government's general authority to release individuals on bond or conditional parole pending removal proceedings.

- 3 -

Case 3:15-cv-01020  Document 16  Filed 01/04/16  Page 3 of 12 PageID #: 74

INA § 236(c); 8 U.S.C. § 1226(c). Subsection (c) contains two paragraphs. The first, paragraph (c)(1) provides:

> (c) Detention of criminal aliens
>
> (1) The Attorney General shall take into custody any alien who—
>
> > (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> >
> > (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii),(B), (C), or (D) of this title,
> >
> > (C) is deportable under section 1227(a)(2)(A)(I) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or
> >
> > (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> ***when the alien is released***, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1) (emphasis added). The second paragraph of Section 236(c) displaces Section 236(a)'s general bond eligibility provision and severely limits the circumstances in which noncitizens may be released:

> (c) Detention of criminal aliens
>
> . . .
>
> (2) Release
>
> The Attorney General may release an alien ***described in paragraph (1)*** only if the Attorney General decides pursuant to section 3521 of title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the
- 4 -

> alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c)(2).

## Argument

### I. DHS's No-Bond Detention of Mr. Quiroz Violates the INA.

Mr. Quiroz is not subject to mandatory, no-bond detention without an individualized bond determination because immigration officials did not detain him "when [he was] released" from criminal custody for an offense enumerated in INA § 236(c). Instead, authorities arrested him six years after his conviction, and several years after he successfully completed his two-year probation sentence. The statutory text and structure, legislative history, and Congressional purpose make clear DHS may not detain individuals without the opportunity for an individualized bond determination unless the agency took those individuals into custody at the time of their release from criminal custody.

#### A. The INA Clearly Limits No-Bond Detention to Only Those Non-Citizens Taken Into Federal Immigration Custody When They Are Released from State Criminal Custody.

The plain language of Section 236(c)(1) requires the government to take noncitizens into custody "when [they are] released" if it wishes to apply the mandatory detention provision of Section 236(c)(2). Because Congress spoke clearly in defining who is subject to mandatory detention, the inquiry ends there, and no deference to the Board of Immigration Appeals' decision in *Matter of Rojas*, 23 I&N Dec. 117 (BIA 2001). *Chevron, USA, Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984). *See Castañeda*, Slip Op. at 14-45.

As courts within this Circuit and around the country have consistently concluded, the phrase "when . . . released" language "clearly and unambiguously requires the Attorney General to take into custody certain [noncitizens] without delay in order to make applicable the mandatory detention provisions of 8 U.S.C. § 1226(c). *Khodr v. Adduci*, 697 F. Supp. 2d 774, 779 (E.D. Mich. 2010). As Judge Drain recently put it:

> Here, the plain meaning of the word "when" contains a temporal element. According to the Oxford Dictionary of Current English, the primary definition of "when" is "as soon as" or "at the time that." *The Oxford Dictionary of Current English* 1046 (Della Thompson ed., 2d ed. 1993); *see also Alikhani v. Fasano*, 70 F.Supp. 2d 1124, 1130 (S.D. Cal. 1999) (explaining that "Webster's Third New International Dictionary defines 'when' as 'just after the moment that.'" Therefore "the clear language of the statute indicates that the mandatory detention of aliens 'when' they are released requires that they be detained at the time of release."); *Pastor-Camarena v. Smith*, 977 F.Supp. 1415, 1417 (W.D. Wash. 1997) ("The plain meaning of this language is that it applies immediately after release from incarceration, not to aliens released many years earlier."); *Louisaire [v. Muller]*, 758 F.Supp. 2d [229,] 236 (S.D. N.Y. 2010) ("Matter of Rojas [is] contrary to the plain language of the statute. The clear purpose of §1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated within §1226(c)(1)(A)-(D) immediately upon their release from criminal sentences for those same offenses," even if they are still serving those sentences "under parole, supervised release, or probation.").

*Rosciszewski v. Adduci*, 983 F.Supp.2d 910, 915-16 (E.D. Mich. Nov. 13, 2013). *See also Mudhallaa v. Bureau of Immigration & Customs Enforcement*, No. 15-10972, 2015 U.S. Dist. Lexis 55927 (E.D. Mich. Apr. 29, 2015) (Cohn, D.J.) (adopting the analysis of *Khodr* and *Rosciszweski* notwithstanding intervening circuit precedent from other circuits). *See also Quezada-Bucio v. Ridge*, 317 F.Supp.2d 1221 (W.D. Wash. 2004).

Delving deep into the legislative history of the INA's current "when . . . released" language, an evenly divided First Circuit en banc panel let stand the decisions of the district courts below holding that Section 236(c) is unambiguous, and individuals arrested years after their release from criminal custody are not subject to it. *Castañeda*,

Slip Op. at 14-44. As elucidated by the panel opinion, DHS's interpretation of Section 236(c)'s "when . . . released" as being ambiguous is tenable if divorced from the structure, context, and history of the statutory language Congress enacted.

### B. Even if the Mandatory Detention Statute Were Ambiguous, *Matter of Rojas* is Entitled No Deference Because It Is Unreasonable.

Even if this Court were to reach *Chevron* step two by determining that Section 236(c) is ambiguous, no deference to the agency's interpretation of the detention statute is warranted. In *Matter of Rojas,* the BIA held that the mandatory detention statute applies regardless of how long an immigrant has been out of criminal custody for a removable offense. *Rojas* at 127. Notably, in reaching this conclusion, the BIA held that the "when . . . released" clause in § 1226(c) "does not direct the Attorney General to take custody of aliens immediately upon their release from "criminal confinement." *Id*. at 122. However, the BIA held that the "when . . . released" language was a "statutory command" rather than a "description of an alien who is subject to deportation," and therefore mandatory detention could apply to non-citizens days, months, or even years after their release from criminal custody. *See Id*. at 121-22.

Seven BIA members dissented from the opinion, finding the distinction cited by the majority implausible. *See Id*. at 134 (Rosenberg, dissenting) ("[T]he majority fails to provide any reason why characterizing the language as a directive makes it any less a description, particularly when that description is communicated as part of a mandate to the Attorney General."). Based on the plain language of the statute, the dissent concluded that Congress unambiguously intended for mandatory detention to apply only to individuals detained at the time of the release from criminal custody for an enumerated offense. *See Id*. at 130-34.

- 7 -

The Board's conclusion is legally impermissible and entitled to no deference because it excises the "when . . . released" clause from Paragraph (1) of Section 236(c), thus rendering it surplusage. *See Khodr*, 697 F.Supp.2d at 789. Moreover, it divorces "when . . . released" from the overall statutory scheme. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 36 (1998) ("A statute is to be considered in all its parts when construing any one of them.") The Board in *Rojas* concluded "when . . . released" is not part of the description of individuals subject to mandatory detention. 23 I&N Dec. at 121-22. However, § 1226(c)(1) is one sentence, which as a whole describes those immigrants who may not be released pending removal proceedings-the "when . . . released" clause refers back to the enumerated "offense" triggering mandatory detention, and the sentence must therefore be read as a whole. *See* 8 U.S.C. § 1226(c)(1); *Saysana v. Gillen,* 590 F.3d 7, 14 (1st Cir. 2009) ("We believe that [the government's] reading of the statutory language is a strained one . . . the plain language of the statute does not render the term 'when released' meaningless as applied to [subsections (A)-(D)] . . . A far more natural reading is that the 'when released' language applies to an alien who has been detained criminally for one of the listed activities.").

Moreover, the Board's overly broad construction of § 1226(c) is inconsistent with the overall immigration detention scheme. Immigration officials retain the broad authority under 8 U.S.C. § 1226(a) to detain and, if they so choose, release noncitizens facing removal, including people with past criminal convictions. Section 1226(c)(l) is specified as an exception to this general rule. *See* § 1226(a) (specifying authority for release "[e]xcept as provided in subsection (c)"). As such, § 1226(c)(l) is much more narrow in scope, prohibiting release for noncitizens who are transferred directly from criminal custody into immigration custody for the specific offenses enumerated in § 1226(c)(l).

Failing to give any substantive meaning to the "when . . . released" clause vastly expands the scope of mandatory detention and heavily curtails the scope of immigration officials' authority under § 1226(a) to make individual bond determinations. *See Matter of Patel,*15 I. & N. Dec. (BIA 1976) (setting forth general rule that noncitizens should not be detained unless they are flight risks or dangerous). In other words, Respondents' reading permits the exception-mandatory detention under discrete circumstances-to swallow the rule: that Congress gave immigration officials general authority to detain and release immigrants through individualized bond determinations pending the conclusion of their removal proceedings.

By ignoring this overall statutory scheme, Respondent advances a reading of the statute that is contrary to its purpose. Congress could have predicated mandatory detention upon whether a person had been convicted of certain offenses without saying anything about the timing of release from criminal custody, but it did not. Congress did not do so because it intended for mandatory detention to serve a specific function-to ensure that individuals who have been incarcerated for certain types of removable offenses will *remain* in custody until they can be removed. As the First Circuit recently explained in *Saysana v. Gillen:*

> The mandatory detention provision does not reflect a general policy in favor of detention; instead, it outlines specific, serious circumstances under which the ordinary procedures for release on bond at the discretion of the immigration judge should not apply. . . . [F]inding that the "when released" language serves this more limited but focused purpose of preventing the return to the community of those released in connection with the enumerated offenses, as opposed to the amorphous purpose the Government advances, avoids attributing to Congress the sanctioning of the arbitrary and inconsequential factor of any post-[Oct. 9, 1998] custodial release becoming the controlling factor for mandatory detention.

590 F.3d at 17. Mandatory detention fails to serve Congress's "focused purpose" when applied to individuals who have long since been released from their allegedly removable offenses. *See Id. See also Quezada-Bucio v. Ridge,* 317 F. Supp. 2d 1221, 1230-31 (W.D. Wash. 2004) ("Petitioner was released from state custody, and then continued to live in the community without further criminal conduct. It does not appear that he attempted to elude authorities at any time, and the []ICE was able to find him and serve him with a Notice to Appear, to which he subsequently responded by appearing at his removal proceedings. Nothing about applying [non- mandatory detention] to petitioner's situation convinces this Court that, as a matter of public policy, the Department of Homeland Security should be allowed to continue detaining him years after he has been released from state custody . . . .").

*Rojas* is also an unreasonable statutory construction because it is contrary to the Rule of Lenity. Given the significant liberty interests at stake with Section 236(c), any interpretation of it must be guided by "the longstanding principle construing any lingering ambiguities in deportation statutes in favor of the alien." *INS v. Cardoza-Fonseca,* 480 U.S. 421, 449 (1987). *See also I N S. v. St. Cyr,* 533 U.S. 289, 320 (2001).

Finally, the Government's position in *Rojas,* and in this litigation, is untenable because any ambiguity in a statute must be resolved so as not to raise constitutional concerns. *See Rust v. Sullivan,* 500 U.S. 173, 190-191 (1991) ("A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score.") (quoting *United States v. Jin Fuey Moy,* 241 U.S. 394, 401 (1916); *see also Rust,* 500 U.S. at 191 (noting that the "canon is followed out of respect for Congress, which we assume legislates in the light of constitutional limitations.") (citations omitted). Here, Congress has promulgated a

mandatory detention statute that presumes, as a constitutional matter, that a class of noncitizens convicted of certain crimes categorically poses a danger to the community and/or a flight risk. *See generally Demore v. Kim*, 538 U.S. 510 (2004). However, by adopting an interpretation that sweeps in noncitizens who, like Petitioner, have been free and contributing safely to their communities for a period of months—and in this case, years—the government allows practical experience to undermine the otherwise constitutionally permissible Congressional presumption. Because of the years of experience that demonstrate Mr. Quiroz is not a danger to his community, and because he voluntarily reported to court for his traffic ticket, applying a Congressional presumption of dangerousness or flight risk to him at this point would violate his right to Due Process. Consequently, the government's interpretation of INA § 236(c) would bring it into constitutional doubt and it therefore must be rejected.

## Conclusion

Mr. Quiroz does not seek his own immediate release. Rather, he merely seeks what the INA and the Due Process Clause guarantee him: an individualized bond determination. For the foregoing reasons, he respectfully requests that this Court grant him that opportunity.

Date: January 4, 2016             Respectfully submitted,

/s R. Andrew Free
**R. ANDREW FREE, TN BPRN 30513**
Law Office of R. Andrew Free
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219

- 11 -

(615) 432-2642 (office)  
(615) 244-4345 (fax)  
Andrew@ImmigrantCivilRights.com

## CERTIFICATE OF SERVICE

I certify that on today's date, I served a true and correct copy of the foregoing *Petitioner's Reply/Traverse* on the following individuals via this Court's CM/ECF system:

Joseph D. Hardy, Jr  
Department of Justice-Office of Immigration Litigation  
PO Box 868  
Ben Franklin Station  
Washington, DC 20008

Dated: January 4, 2016      By: /s R. Andrew Free, TNBPRN 30513  
                                      R. Andrew Free